Filed 6/25/24  P. v. Sutton CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B329699 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. TA157431) |
| DARIUS SUTTON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hector E. Gutierrez, Judge.  Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Plaintiff and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stephanie C. Santoro and J. Michael Lehman, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

The superior court denied defendant Darius Sutton's motion to suppress evidence. This appeal followed. (Pen. Code,[1] § 1538.5, subd. (m) [defendant may appeal from order denying motion to suppress evidence despite plea of guilty].) We affirm.

Sutton was charged by information with possession of a firearm by a felon. (§ 29800, subd. (a)(1).) It was also alleged he had served a prior prison term. After the court denied his motion to suppress, Sutton pleaded no contest to the charge and admitted the prior prison term. He was sentenced to the upper term of three years. Execution of sentence was suspended and Sutton was placed on probation for a period of two years.

Citing *Terry v. Ohio* (1968) 392 U.S. 1, 21, Sutton contends that his detention was not supported by reasonable suspicion that a crime had been or was about to be committed and that he was involved in that activity.

**FACTS**

On May 1, 2022, Los Angeles Police Officer Isaiah Peltekian, a member of the gang enforcement detail, was patrolling southeastern Los Angeles with two other officers. Los Angeles Police Officer Delgado was driving and Peltekian was in the front passenger seat. It was 9:00 p.m. Streetlights and the police car's headlights were on.

Peltekian had been a police officer for four and a half years. He had worked in the area for three and a half years. During that time, he had responded around 10 times to calls when people or property had been hit by gunfire.

Sutton was approximately 20 yards away when Peltekian first saw him. Sutton and two other males were standing in front

---

[1]     Statutory references are to the Penal Code.

2

of 10211 South Vermont. Sutton looked toward the police car, raised his eyebrows, dropped his mouth, jerked his head backwards, gave a "surprised, startled look" and grabbed the right side of his waistband with his right hand. To Peltekian it looked like Sutton was holding on to something. At this point, the officers were probably 10 yards from defendant. The property facing the street had a driveway blocked off between the sidewalk and the residence by a large, solid six-foot tall, metal gate.

Peltekian testified at the preliminary hearing. He stated when Sutton grabbed the right side of his waistband, Peltekian concluded he was in possession of a firearm. This was based on Peltekian's training and experience, Sutton's actions, and prior shootings and prior firearm arrests that had taken place in the area. Peltekian stated at the preliminary hearing, "*So I was going* to detain him for a weapons investigation." (Italics added.) Peltekian *intended* to detain Sutton as soon as Peltekian got out of his vehicle.

The officers left the vehicle. As they got out, Peltekian called out to the three individuals to stop. Peltekian gave the command because he believed Sutton had a firearm. Peltekian was questioned at the preliminary hearing as follows: "[District Attorney]: Okay. So you're shouting this to the group; right? [¶] [Peltekian]: My attention was focused on Mr. Sutton. [¶] "[District Attorney]: I know your attention was focused towards Mr. Sutton, but your command was just a general 'stop'; correct? [¶] [Peltekian]: Correct." Sutton continued to walk away.

Peltekian was now five feet from Sutton. Sutton's right arm went into a tossing motion to his left. Peltekian heard a metallic object hit the ground. The following testimony was given at the preliminary hearing, "[District Attorney]: When you hear—

after seeing the motion and hearing that sound, what is the first thought that you believed you heard? [¶] [Peltekian]: I believed, based on my training and experience, that it was a firearm."

The next question and answer were pivotal: "[District Attorney]: Did you detain the defendant before you heard that noise and saw the tossing motion, or afterward? [¶] Peltekian]: It—I took him into custody after the tossing motion and I heard it."

After he had detained Sutton, Peltekian saw a firearm on the ground. Peltekian then saw a hand come out from underneath the gate and grab the firearm. Peltekian heard a loud thud. Another officer climbed the roof of the building to the south and recovered the firearm. The firearm was in working condition.

## DISCUSSION

### I.   *Governing Principles*

The issue in this case is whether Sutton's detention was justified. Both sides cite *Terry v. Ohio*, but *Terry v. Ohio* was a "stop and frisk" case; there was no "frisk" in the case at bar. Nonetheless, the constitutional limitation on police action formulated in *Terry v. Ohio* applies to this case as well: "[T]he notions which underlie both the warrant procedure and the requirement of probable cause remain fully relevant in this context. In order to assess the reasonableness of [police] conduct as a general proposition, it is necessary 'first to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen,' for there is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the

4

invasion which the search [or seizure] entails.' [Citation.].  And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (*Terry v. Ohio, supra,* 392 U.S. at pp. 20–21.)

The intrusion in this case was Sutton's detention.  When it comes to detention or to a "stop", "circumstances short of probable cause to make an arrest may justify a police officer stopping and briefly detaining a person for questioning or other limited investigation." (*In re Tony C.* (1978) 21 Cal.3d 888, 892, superseded by statute on other grounds as stated in *In re Christopher B.* (1990) 219 Cal.App.3d 455, 460, fn. 2.)

There are limitations on the right of the police to detain or stop a person.  "[T]he courts have concluded that in order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity.  Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation], to suspect the same criminal activity and the same involvement by the person in question. The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith." (*In re Tony C., supra,* 21 Cal.3d at p. 893, fn. omitted.)

## II. *Standard of Review*

On review of a motion to suppress evidence made pursuant to Penal Code section 1538.5, the trial court's factual findings, "whether express or implied, must be upheld if they are supported by substantial evidence." (*People v. Lawler* (1973) 9 Cal.3d 156, 160; See *People v. Ramos* (2004) 34 Cal.4th 494, 505, superseded by statute on other grounds as noted in *People v. Trujillo* (1990) 217 Cal.App.3d 1219, 1223.) The reasonableness of a search is an issue of law warranting independent review of the trial court's conclusions. (*Ramos,* at p. 505.) In doing so we do not consider each fact in isolation but consider the totality of the circumstances. (*United States v. Sokolow* (1989) 490 U.S. 1, 8; *United States v. Cortez* (1981) 449 U.S. 411, 417; see *People v. Silveria and Travis* (2020) 10 Cal.5th 195, 232.)

## III. *Analysis*

This case satisfies both prongs of the test outlined in *In re Tony C.* As discussed below, there was activity relating to crime, which was discarding what Peltekian had reason to believe was a gun, and defendant was involved in that activity.

As the officers exited the vehicle, Peltekian called out to the three individuals to stop. The question is whether this amounted to a detention.

Peltekian did not think so as evidenced by his preliminary hearing testimony: "Q: Now, people don't—and what I mean by people, the civilians that are out there while you are patrolling, they don't have to talk with you if they don't want to; correct? [¶] A: Correct. [¶] Q: If they are not under arrest, right? [¶] A: If they are not detained I would say 'yes.' [¶] Q: So, Mr. Sutton turning

6

around and walking away was not anything, in and of itself, wrong that he was doing or illegal, I should say; correct? [¶] A: Correct."

Sutton continued to walk away despite the "stop" command. Peltekian did not think this was wrong or illegal. This indicates that Peltekian did not intend the "stop" command to operate as a detention. It was not until the tossing motion that Peltekian effectuated what he thought was Sutton's detention.

The record confirms that the detention did not occur until after the tossing motion. Thus, the prosecutor asked Peltekian: "Q: Did you *detain* the defendant *before* you heard that noise and saw the tossing motion, or *afterward*?" (Italics added.) Peltekian responded, "I took him into custody after the tossing motion and I heard it."

Defendant was evidently free to move about after Peltekian called out "stop." Objectively, Sutton could not be considered detained if, from the officers' point of view, he was free to move about and disregard the instructions to stop. It was not until Sutton attempted to throw away the gun that he was detained.

One should distinguish between factors that led Peltekian to believe that Sutton was armed, on the one hand, and Peltekian's decision to detain Sutton, on the other. A number of factors, such as Sutton's startled reaction when he saw the officers and Sutton grabbing his waistband, led Peltekian to believe Sutton was armed. While Peltekian *intended* to detain Sutton for a weapons investigation based on his initial observations, he did not do so. The detention, on the other hand, was based on the additional tossing motion and the metallic sound when the object hit the ground. In the latter instance,

7

Peltekian's training and experience told him Sutton was discarding a gun.

Peltekian's belief that Sutton was attempting to discard a gun was objectively reasonable. It was based on the officer's training and experience. The tossing motion alerted Peltekian to the circumstance that an activity related to crime was occurring in that appellant was attempting to discard what Peltekian had reason to believe was a gun. Sutton's attempt to divest himself of an object at the sight of the police was an indication of criminal activity. It was more indicative of criminal activity than a bulging pocket (*People v. Rosales* (1989) 211 Cal.App.3d 325, 330) or reaching inside the jacket (*People v. Lee* (1987) 194 Cal.App.3d 975, 983), both of which justified the detention in those cases.

IV.    ***People v. Flores* (2024) 15 Cal.5th 1032 (*Flores*)**

*People v. Flores* is the most recent decision of the California Supreme court discussing the legality of a detention. Unlike the case at bar, the facts in *Flores* precluded a finding that there was a reasonable probability that the defendant was engaged in criminal activity. A comparison of the facts in *Flores* with the facts of this case on the issue of reasonable probability of criminal activity is instructive.

In *Flores*, our Supreme court noted that a person may decline to engage in a consensual encounter with the police, as Sutton did here. However, nervous, evasive behavior, including expression of shock upon seeing a police officer "may be particularly noteworthy," along with presence in an area of criminal activity. (*Flores*, *supra,* 15 Cal.5th pp. 1043–1044.) But, given that there are many law-abiding citizens who live and work in areas where criminal activity is prevalent, presence in an area of criminal activity is not enough to detain a person. And while

8

Flores's behavior was odd in that he crouched down as if trying to tie his shoe, a "detention is not satisfied simply because a person's behavior is 'odd'." (*Id.* at p. 1045.)

That Flores was in an area known for narcotics did not justify the detention. "Notably, [the police] did not see Flores engage in any conduct suggesting he was there to buy or sell drugs or was otherwise involved in illegal conduct. He did not see Flores interact with anyone, or retrieve or hide anything." (*Flores, supra*, 15 Cal.5th at p. 1045.) The court held: "[B]efore an officer can compel compliance with a show of authority, articulable facts must support a reasonable suspicion of criminal activity. In the absence of such facts, the person is constitutionally protected and empowered to go on his or her way." (*Id.* at p. 1051.)

In the case at bar, there were three facts underlying Peltekian's initial opinion that Sutton was armed. They were in a high crime area where shootings had occurred, and Sutton expressed shock and clutched his waistband when he saw the officers. In and of themselves, these facts did not justify a detention, but Peltekian could certainly take note of them. It was not until Sutton threw away what Peltekian justifiably believed was a gun that Sutton was detained. The act of jettisoning the gun was what brought about the detention.

These facts distinguish this case from *Flores*. The act of attempting to hide what he was carrying justified the detention.

V. ***Sutton's Other Contentions***

Sutton contends that walking back to his property did not justify his detention. But Sutton was not detained because he walked back to his property. He was detained because the officer believed he threw away a firearm. Sutton cites a number of

9

sources that have commented adversely on police detentions of African-American males, which describes Sutton and his companions. But this was not one of those cases. Peltekian saw that Sutton and his companions were African American, but he did not initiate the detention based on that observation.

Next, Sutton contends that the nature of the area did not justify his detention. Contrary to Sutton's contention, he was not detained because there had been shootings in the area or because this was a "high crime" area. While both of these circumstances existed, they were not the reason for his detention. Nor was the detention based on a "Black male in a bad neighborhood" as Sutton contends. The detention occurred because it appeared to the officer that Sutton discarded the gun he was carrying.

Sutton concedes that appellant grabbing his waistband may have given Peltekian the "reasonable suspicion necessary" for a pat down search if he was "constitutionally detain[ed]" but, according to Sutton, he was not lawfully detained. We disagree. The detention was based on Sutton's act of throwing away his gun; the detention was lawful. The concession that Sutton grabbing his waistband would justify a pat down search concedes a point not at issue since there was no pat down search.

Sutton makes the unlikely argument that he did not abandon his privacy interest in the gun when he threw it away on his own property, which means that he "still had a recognizable privacy interest" in the gun. The point of this argument is that the gun could not be seized by the police.

Sutton concedes this is a new argument in that "neither of the two courts nor the prosecutor ever addressed whether appellant abandoned his Fourth Amendment privacy interest in the firearm." That Sutton "still had a recognizable privacy

interest" in the gun yields to the reality that he was an ex-felon in possession of a gun. In any event, as an argument advanced for the first time on appeal, it is forfeited. (*People v. Jones* (1998) 17 Cal.4th 279, 299, fn. 1 [" 'it would be wholly inappropriate to reverse a superior court's judgment for error it did not commit and that was never called to its attention' "].) It is of marginal interest, therefore, that, as the Attorney General points out, the gun was recovered from a nearby roof outside appellant's property.

Finally, defendant contends the magistrate relied on decisions that do not apply because all three decisions cited by the magistrate held that pat-down searches following a detention were unlawful. These decisions are *People v. Pentoja* (2022) 77 Cal.App.5th 483, *King v. State of California* (2015) 242 Cal.App.4th 265, and *People v. Dickey* (1994) 21 Cal.App.4th 952. However, the magistrate cited these cases for the general proposition that officers may act on a reasonable belief that a person is armed. In this case, Sutton was not detained when Peltekian first formed the opinion that appellant was armed; he was detained only after he was seen making the tossing motion. The magistrate was heading in the right direction in focusing on the officer's belief that appellant was armed.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

GRIMES, J.

WILEY, J.